IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CURTIS T. HOWARD,**                              Case No. 5:14 CV 2587

     Petitioner,                              Chief Judge Solomon Oliver, Jr.

     v.                              Magistrate Judge James R. Knepp, II

**MIKE DEWINE,**

     Respondent.                              REPORT AND RECOMENDATION

## INTRODUCTION

*Pro se* Petitioner Curtis T. Howard ("Petitioner"), a prisoner in state custody, filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Mike DeWine ("Respondent")[1] filed an answer (Doc. 5) and Petitioner filed a response in opposition (Doc. 9). The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Doc. 3). For the reasons discussed below, the undersigned recommends the Court DENY the Petition.

## FACTUAL BACKGROUND

For the purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, erroneous factual findings by the state court. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of

---

1. Michele Miller, as Warden of the Belmont Correctional Institution, is the proper respondent. *See* Rule 2(a) of Rules Governing Section 2254.

appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. In this case, Ohio's Ninth

District Court of Appeals set forth the following findings of fact:

{¶2} On the evening of July 22, 2012, Mr. Howard cut Otto Christian on the chin with a pocket knife in the common room of the rooming house where they lived. The men had very different accounts of how it happened. According to Mr. Christian, he came home from work that day, got his dinner ready, and sat down to eat in a recliner in the common room. As he ate and watched television, he could hear Mr. Howard and another resident arguing outside. The other resident entered the house and went upstairs to his room. Mr. Howard came in the house afterwards, and told Mr. Christian to turn off the television. Mr. Christian refused because, under the house rules, he was allowed to watch it until 11:30 p.m. According to Mr. Christian, although he had a television in his own room, he did not want to watch it there because his room was in the basement and it felt like a dungeon.

{¶3} Mr. Christian testified that, after he refused to turn off the television, Mr. Howard went into the kitchen. When he came back out, he went into his own room, which was off the common room. Mr. Howard returned to the common room soon thereafter and walked toward Mr. Christian. Mr. Christian thought that Mr. Howard was going to walk past him, but as he got near, he "reached over and caught [Mr. Christian] with his hand." Mr. Christian testified that, although Mr. Howard caught him off guard, he trapped Mr. Howard's hand with his neck. Mr. Howard pulled his hand back and struck Mr. Christian again, cutting Mr. Christian's chin with a pocket knife that he had concealed in his hand. When Mr. Howard attempted to strike him a third time, Mr. Christian pushed him away with his legs, shoving him across the room onto a couch. As Mr. Howard recovered, Mr. Christian got up from the recliner and ran out the back door of the house because he knew other people were outside.

{¶4} Mr. Christian testified that, while he was asking the people outside to call for help, Mr. Howard exited the house by the front door and came down the driveway in pursuit of him. Mr. Christian circled around the backyard, attempting to avoid Mr. Howard. The owner of the house arrived in a pickup truck shortly thereafter and told Mr. Christian to get in the back of it so he could take him to the hospital. Mr. Christian testified that it took 19 stitches to close the cut on his chin. He said that he did not know how Mr. Howard got a cut on his arm during the altercation, but suspected that he cut himself after delivering one of his blows.

{¶5} Mr. Howard's recollection of the incident was quite different. According to him, he was alone in his room when someone came into the common room and started blasting the television. He exited his room, saw that it was Mr. Christian, and asked him to turn the volume down. When Mr. Christian refused, Mr. Howard turned the television set off. Mr. Christian yelled at him to turn it back

2

on, but Mr. Howard refused, so Mr. Christian got up, walked over to the television, and turned it back on. When Mr. Howard attempted to turn it off again, Mr. Christian grabbed his arm. According to Mr. Howard, because the door to his room is next to the television set, he had started reaching into his room to get his cellphone, which was lying on a dresser just inside the door. He intended to call the owner of the house about the loud television. When Mr. Christian grabbed his arm, however, he decided to take his pocket knife from the dresser instead. Mr. Howard testified that, as he brought his arm back into the room, he dropped the knife. It was at that time that he also noticed that his arm was bleeding. Mr. Howard said that he reached down, grabbed the knife, and came up swiping at Mr. Christian to get him off of him. After Mr. Howard connected, Mr. Christian stumbled backwards into the recliner and the two men looked at each other briefly assessing their situation.

{¶6} Mr. Howard testified that, following a brief pause, Mr. Christian got up from the recliner and ran out of the room. Mr. Howard followed him because he thought Mr. Christian was responsible for the cut on his arm and he had not had the chance for sufficient retribution. According to Mr. Howard, at the time, he did not realize that his swipe with the pocket knife had cut Mr. Christian's chin. Once Mr. Howard got outside, however, and saw that Mr. Christian was bleeding, he stopped pursuing him and tended to his arm.

{¶7} The Grand Jury indicted Mr. Howard for felonious assault. Before trial, the State informed him that it intended to use other acts evidence under Evidence Rule 404(B). The first incident had occurred in 1994. In that incident, a man accused Mr. Howard of cutting him across the chin with a box cutter. Mr. Howard alleged that he had been acting in self-defense. The second incident had occurred in 2006. In that incident, Mr. Howard was arrested for cutting another man on the neck with a box cutter. Mr. Howard again claimed that he had been acting in self-defense. At the start of trial, the court ruled that the facts of the 2006 incident were admissible, but the details of the 1994 incident could be introduced only if Mr. Howard testified. Because Mr. Howard testified, the jury learned about both incidents. It found Mr. Howard guilty of the offense, and the trial court sentenced him to eight years of imprisonment.

(Doc. 5-1, Ex. 10 at 1-4).

## PROCEDURAL HISTORY

Respondent accurately summarized the procedural history; therefore, it is incorporated herein with only minor changes. (Doc. 5, at 4-7).

3

State Court Conviction

The September 2012 term of the Summit County Grand Jury issued an indictment charging Petitioner with felonious assault. (Doc. 5-1, Ex. 1). Petitioner entered a plea of not guilty. (Doc. 5-1, Ex. 2).

Prior to trial, the State filed a notice of its intent to introduce "other acts" evidence regarding one incident in 1994 and another 2006. (Doc. 5-1, Ex. 3). The court ruled that the 2006 incident was admissible, but the 1994 incident would not be allowed unless Petitioner testified; if he testified the State could introduce this evidence through cross-examination. (Doc. 5, at 4). The case proceeded to trial by jury. *Id.*

Petitioner did testify at trial and the court allowed cross-examination on the 1994 incident. *Id.* After testimony concluded, Petitioner moved for a Rule 29 acquittal, which the court overruled. *Id.* Petitioner also requested the court instruct the jury on the lesser offense of aggravated assault and permit the jury to determine if there was "sufficient provocation." *Id.* This was in addition to the jury considering whether he acted in self-defense. *Id.* The court found that, based on the testimony presented, there was evidence that Petitioner acted in self-defense, but no evidence of sufficient provocation. *Id.* The court, therefore, declined to give an instruction on aggravated assault. *Id.* The jury found Petitioner guilty as charged and sentenced him to eight years in prison. (Doc. 5-1, Exs. 5, 6).

Direct Appeal

Petitioner, through new counsel, filed a notice of appeal with the Ninth District Court of Appeals. (Doc. 5-1, Ex. 7). In his brief, filed August 12, 2013, he raised the following assignments of error:

4

1. The trial court erred in allowing testimony as to other acts and evidence pertaining to other acts therefore denying [him] due process and equal protection under the Constitution of the United States and of Ohio.

2. The trial court erred in its instruction as pertains to other acts or prior convictions in that it failed to clearly instruct that the evidence was received only of a limited purpose and as such, said instruction is plain error.

3. The trial court erred when it failed to give a jury instruction of aggravated assault, an inferior offense [of] the offense of felonious assault.

(Doc. 5-1, Ex. 8). The State filed a brief in response. (Doc. 5-1, Ex. 9). On March 31, 2014, the appellate court affirmed the trial court's judgment. (Doc. 5-1, Ex. 10).

On April 28, 2014, Petitioner, *pro se*, filed a notice of appeal with the Ohio Supreme Court. (Doc. 5-1, Ex. 11). In his memorandum in support of jurisdiction, Petitioner set forth the following propositions of law:

1. Testimony of other acts and evidence of other acts deny due process of law and equal protection under the constitution of the United States and of Ohio.

2. Instructions on other acts or prior convictions must clearly instruct that evidence was received only of a limited purpose.

3. When objective evidence from witness testimony provides for the demonstration of provocation along with evidence of self defense [sic] a jury instruction on aggravated assault was wararnted [sic] as a lesser offense or inferior offense.

(Doc. 5-1, Ex. 12). The State filed a waiver, thereby declining to respond to Petitioner's memorandum in support of jurisdiction. (Doc. 5-1, Ex. 13). On June 25, 2014, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (Doc. 5-1, Ex. 14).

## FEDERAL HABEAS CORPUS

On November 24, 2014, Petitioner, *pro se*, filed the instant Petition for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). He provided it to prison staff for mailing on November 17, 2014. (Doc. 1, at 11). The writ raises the following grounds for relief:

**GROUND ONE**: The trial court erred in allowing testimony as to other acts and evidence, denying Appellant Due Process and Equal Protection under the U.S. Constitution and of Ohio.

Supporting Facts: The trial court allowed the prior acts offenses to be admitted into evidence for the jury to consider in determining the guilt of defendant Howard as to the charge of Felonious Assault.

**GROUND TWO**: The trial court erred in its instructions as pertains to Other Acts and Prior Convictions, said instructions are Plain Error.

Supporting Facts: The trial court failed to clarify on record the instructions to the jury that the prior acts or convictions was [sic] for a "Limited Purpose."

**GROUND THREE**: The trial court erred when it failed to give a Jury Instruction of Aggravated Assault, an inferior offense of Felonious Assault.

Supporting Facts: Counsel for the defendant requested the court to give the Jury Instruction on Aggravated Assault.

(Doc. 1).

JURISDICTIONAL ISSUES

**Procedural Default**

Procedural default occurs when a petitioner fails to fairly present his claims in a federal constitutional context to the highest state court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). Federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . *not* resolved on the merits in the state proceeding due to [the petitioner's] failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977) (emphasis in original); *see also Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

A petitioner may fail to obtain consideration of a claim by a state court by either: (1) failing to fairly raise it before the state court while state remedies are still available, or (2) failing to comply with a state procedural rule which prevents the state court from reaching the merits of

6

the claim. *Wainwright*, 433 U.S. at 80, 84-87. In either scenario, the claim is procedurally defaulted and may not be considered by the federal court on habeas review. *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000).

Respondent claims Petitioner's second ground for relief is procedurally defaulted by his noncompliance with a state procedural rule. In considering this assertion, the court conducts a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether it may be excused:

1. Whether there is a procedural rule applicable to the claim at issue, and whether the petitioner in fact failed to follow it;

2. Whether the state courts actually enforced their procedural sanction;

3. Whether the state's procedural forfeit is an "adequate and independent ground" on which the state can rely to foreclose federal review; and

4. Finally, in order to avoid default, the petitioner can demonstrate that there was "cause" for him to neglect the procedural rule, and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Demonstrating "cause" requires a petitioner to "show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Demonstrating prejudice requires him to show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

A procedural default will also be excused if the petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S.

722, 750 (1991). The Supreme Court has held that such an inquiry requires a petitioner "supplement[] his constitutional claim with a colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)). Maintaining this exception to the rule against reviewing procedurally defaulted claims serves as "an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty." *Stone v. Powell*, 428 U.S. 465, 492–93, n.31 (1976)).

*Ground Two*

In ground two, Petitioner claims the trial court gave the jury an incorrect instruction regarding other acts evidence. (Doc. 1, at 4). Respondent argues this ground is procedurally defaulted because the appellate court unequivocally enforced a state procedural rule in dismissing the allegation of improper jury instructions. (Doc. 5, at 10-15). Following application of the *Maupin* standard, the undersigned agrees.

First, there is a procedural rule applicable to the claim at issue and Petitioner failed to follow it. In Ohio, the applicable rule is Ohio Crim. R. 30(a), which states, in relevant part, "[o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict". *See Scott v. Mitchell*, 209 F.3d 854, 865 (6th Cir. 2000). Petitioner does not question the applicability of Ohio's contemporaneous objection law, nor does he claim to have objected at trial. In fact, he asserts that plain error is the correct standard of review and does not address his second ground for relief in his brief. (Doc. 1, at 5).

Second, the appeals court enforced the contemporaneous objection rule by proceeding into a plain error review of the issue. The Ninth District Court of Appeals held:

{¶19} "This Court reviews a trial court's decision to give or decline to give a particular jury instruction for an abuse of discretion under the facts and

circumstances of the case." *State v. Sanders,* 9th Dist. Summit No. 24654, 2009-Ohio-5537, ¶ 45. In this case, however, because Mr. Howard did not object to the instruction, he has forfeited all but plain error. *State v. Horton,* 9th Dist. Summit No. 26407, 2013-Ohio-3902, ¶ 50. Under Criminal Rule 52(B), a plain error or defect that affects a substantial right may be noticed although it was not brought to the attention of the trial court. *Id.* "A plain error must be obvious on the record, such that it should have been apparent to the trial court without objection." *Id.,* quoting *State v. Kobelka,* 9th Dist. Lorain No. 01CA007808, 2001 WL 1379440, *2 (Nov. 7, 2001). "As notice of plain error is to be taken with utmost caution and only to prevent a manifest miscarriage of justice, the decision of a trial court will not be reversed due to plain error unless the defendant has established that the outcome of the trial clearly would have been different but for the alleged error." *Id.*

{¶20} "[T]he instructions found in the Ohio Jury Instructions are not mandatory, [but] 'are recommended instructions based primarily upon case law and statutes[.]'" *State v. Armstrong,* 9th Dist. Summit No. 24479, 2009-Ohio-5941, ¶ 13, quoting *Buehler v. Falor,* 9th Dist. Summit No. 20673, 2002 WL 121204, *1 (Jan. 30, 2002). The instruction that the trial court gave in this case implicitly informed the jury that the evidence about Mr. Howard's other acts was admitted for only a limited purpose in that it told the jurors that the evidence could not be used "as evidence of the (d)efendant's character in order to show that he acted in conformity with that character." The court also affirmatively instructed the jury that the evidence could only be "considered by you to impeach the credibility of the [d]efendant or to prove motive, intent, opportunity, preparation, plan, absence of mistake or accident[,]" which were the limited purposes for which it was admitted. Upon review of the record, we conclude that Mr. Howard has failed to demonstrate that the trial court plainly erred when it instructed the jury about Mr. Howard's prior criminal acts. Mr. Howard's second assignment of error is overruled.

(Doc. 5-1, Ex. 10 at 8-9).

Importantly, "[a] state court's review of an issue for plain error is considered by the Sixth Circuit as the enforcement of a procedural default." *Jalowiec v. Bradshaw*, 2008 WL 312655, at *23 (N.D. Ohio), *aff'd*, 657 F.3d 293 (6th Cir. 2011) (citing *Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir. 2004); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001)). Because the appellate court clearly relied upon a procedural bar in denying Petitioner's second ground for relief, the second prong of *Maupin* is met.

9

Third, "[t]he Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal review absent a showing of cause for the waiver and resulting prejudice". *Hinkle*, 271 F.3d at 244; *Jalowiec*, 2008 WL 312655, at *23 (citing *Williams*, 380 F.3d at 968); *see also Scott*, 209 F.3d at 867 ("[t]he Supreme Court [has] specifically found that default imposed for failure to object contemporaneously as required by Ohio's Rule 30 is an adequate and independent state ground").

Fourth, Petitioner has claimed neither cause nor prejudice for the default. He also has not claimed actual innocence. Thus, the undersigned recommends the Court dismiss ground two of the Petition because it is procedurally defaulted.

## Non-Cognizable Claims

With regard to Petitioner's remaining two grounds for relief—grounds one and three— the Court will not have jurisdiction over Petitioner's claims for purposes of habeas corpus review if they do not "challenge the legality of his custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254. Indeed, "the writ of habeas corpus is not available to remedy errors of only state law". *Smith v. Morgan*, 371 F. App'x 575, 582 (6th Cir. 2010) (citing 28 U.S.C. § 2254(a)); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("[a] claim based solely on an error of state law is not redressable through the federal habeas process.").

Nevertheless, habeas relief may be available if an alleged error of state law subjected the petitioner to a "fundamentally unfair" criminal process. *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006). The category of infractions that violate fundamental fairness is narrowly defined, and includes only state rulings that "offend some principle of justice so rooted in the traditions

10

and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521, 523 (6th Cir. 2007) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1977) (citations omitted)); *see also Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993). The habeas petitioner bears the burden to show "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Bey*, 500 F.3d at 521.

*Ground One*

In his first ground for relief, Petitioner alleges a violation of his due process right to a fair trial when the trial court improperly admitted other act evidence in violation of Ohio Rule of Evidence 404(b). (Doc. 9, at 5). Specifically, he argues that the trial court allowed the prosecution to present character evidence of a prior act to prove he acted in conformity with that character on this occasion. (Doc. 9). He points to a dissenting opinion in the state appellate court, which supports his argument. (Doc. 9, at 8); *see also State v. Howard*, 2014-Ohio-1334 (Ohio Ct. App., Summit County Mar. 31, 2014) (Belfance, P.J., dissenting).

Petitioner also presents state law allegedly supporting his decision, but "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). As such, Petitioner has not shown a violation of federal law to give this Court jurisdiction of the first ground for relief.

Alternatively, Petitioner has failed to meet his burden to show he was subjected to a fundamentally unfair process. Ohio Rule of Evidence 404(b) states in part, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof

11

of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Here, the trial court specifically included a limiting instruction to the jury that the prior conviction, "may not be considered by you as evidence of the defendant's character in order to show that he acted in conformity therewith." (Doc. 5-1, Ex. 4 at 5-6). The appellate court properly presumed the jury followed the instruction, and Petitioner offers no evidence to rebut this presumption. (Doc. 5-1, Ex. 10 at 6). The trial court allowed the evidence to come in under the exception to the rule and the jury was properly instructed on the limitations of its application.

The undersigned, therefore, recommends that the first ground for relief be dismissed as non-cognizable.

*Ground Three*

In his third ground for relief, Petitioner argues the "trial court erred when it failed to give a jury instruction of aggravated assault, an inferior offense of felonious assault." (Doc. 1, at 6). He asserts "the court's refusal to instruct the jury on his affirmative provocation defense so infected the entire trial that the resulting conviction violates due process." (Doc. 9, at 12). Respondent argues this ground for relief is both meritless and non-cognizable. (Doc. 5, at 15). The undersigned agrees.

Petitioner draws the Court's attention to numerous pieces of trial evidence which he argues is sufficient to show he was actually provoked. (Doc. 9, at 14). He points to evidence purporting to show that the victim's behavior subjectively angered him. (Doc. 9, 14-16).

In Ohio, the determination of whether provocation was reasonably sufficient to induce sudden passion or a fit of rage requires both an objective and subjective analysis. *State v. Shane*, 63 Ohio St.3d 630, 634 (1992). Objectively, the provocation must lead an "ordinary person [to

12

passions] beyond the power of his or her control[ ]"; and subjectively, the court must ask "whether this actor, in this particular case, actually was under the influence of sudden passion or in a sudden fit of rage." *Id.* at 634-35.

Petitioner offers no evidence a reasonable person would be provoked in this situation. Thus, the state appeals court properly concluded the trial court did not error in failing to instruct the jury on aggravated assault.

{¶22} As noted previously, "[t]his Court reviews a trial court's decision to give or decline to give a particular jury instruction for an abuse of discretion under the facts and circumstances of the case." *Sanders,* 2009-Ohio-5537 at ¶ 45. The Revised Code's aggravated assault provision, Section 2903.12(A), provides that "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly * * * [c]ause serious physical harm * * *."

> The evidence "will be sufficient to entitle a defendant to an instruction on [aggravated assault] as an inferior degree of [felonious assault,] if under any reasonable view of the evidence, and when all of the evidence is construed in a light most favorable to the defendant, a reasonable jury could find that the defendant had established by a preponderance of the evidence the existence of one or both of the mitigating circumstances."

*State v. Bostick,* 9th Dist. Summit No. 25853, 2012-Ohio-5048, ¶6, quoting *State v. Rhodes,* 63 Ohio St.3d 613, 617-618 (1992).

{¶23} We conclude that the trial court correctly refused to instruct the jury on aggravated assault because Mr. Howard did not present any evidence that would support a finding of serious provocation. "Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force." *State v. Deem,* 40 Ohio St.3d 205, 211 (1988). "In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time." *Id.*

{¶24} According to Mr. Howard, when he turned off the television, Mr. Christian told him to turn it back on, then got up to do it himself. When Mr. Howard attempted to turn it back off, Mr. Christian "snatched me [on the arm] like he was

going to manhandle me." It was not disputed that Mr. Christian is much larger than Mr. Howard, outweighing him by a substantial margin.

{¶25} Although Mr. Howard testified that he noticed that his arm was bleeding before he swung at Mr. Christian, Mr. Howard had no idea how his arm got cut. "Provocation must be 'sufficient to arouse the passions of an ordinary person beyond the power of his or her control.'" *State v. Mack,* 82 Ohio St.3d 198, 201 (1998), quoting *State v. Shane,* 63 Ohio St.3d 630, 635 (1992). We believe that being grabbed on the arm and experiencing a cut in the process would not arouse the passions of an ordinary man beyond the power of his control such that he would be aroused to use deadly force. In addition, there is no evidence that Mr. Howard "actually was under the influence of sudden passion or in a sudden fit of rage." *Shane* at 634. According to Mr. Howard, he swung at Mr. Christian simply "to get him back off of me" and denied that he was mad at Mr. Christian. The trial court, therefore, did not abuse its discretion when it denied Mr. Howard's request for a jury instruction on aggravated assault.

(Doc. 5-1, at 154-55).

Importantly, alleged errors in jury instructions generally do not rise to the level of federal constitutional violations. *See Engle v. Isaac*, 456 U.S. 107 (1982). The Supreme Court has not addressed "whether the Due Process clause would require the giving of such instructions in a noncapital case." *Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980). The Sixth Circuit answered this question in the negative, holding the Constitution did not require a lesser-included offense instruction in non-capital cases because these cases did not implicate the Eighth Amendment. *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir. 1990) (en banc).

In the absence of a further Supreme Court decision on this matter, a state court determination of whether instructions on lesser-included offenses were necessary cannot be contrary to, or an unreasonable application of, clearly established Supreme Court precedent; and thus, falls beyond the authority of a habeas court. *See McMullan v. Booker*, 761 F.3d 662, 667 (6th Cir. 2014); *Tegeler v. Renico*, 253 F. App'x 521, 525 (6th Cir. 2007) (where an open question exists in Supreme Court jurisprudence as to a particular issue of law, no violation of

14

"clearly established" federal law as determined by the Supreme Court can be shown). Thus, the undersigned recommends the Court deny Petitioner's third ground for relief as non-cognizable.

### CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the Court recommends the Petition be DENIED.

s/James R. Knepp, II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).